IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–01507–KMT

SEVERY CREEK ROOFING, INC., a Colorado corporation,

　　Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation

　　Defendant.

---

**ORDER**

---

This matter is before the court on "Plaintiff's Motion for Leave to File Late Expert Disclosure" ("Mot.") [Doc. No. 22] filed April 1, 2020. "Defendant's Response to Plaintiff's Motion for Leave to File Late Expert Disclosure (Dkt.22)" ("Resp.") [Doc. No. 24] was filed on April 9, 2020 and Plaintiff's Reply[1] [Doc. No. 25] was filed on April 13, 2020.

The gravamen of the motion is that Plaintiff inadvertently failed to timely file affirmative expert disclosures for an independent meteorologist due to a misunderstanding of directions given to newly-hired support staff. When Plaintiff's counsel reviewed the file to see if a meteorologist was important enough to quibble about, counsel discovered that he had forgotten to officially designate as an affirmative expert its engineer, Martin Shields, retained during the

---

[1] The caption on Plaintiff's Reply reads, "Plaintiff's Motion for Leave to File Late Expert Disclosure" but the body of the documents clearly indicates it is a reply.

claims process and whose identity and report had long been in the possession of Defendant. Mr. Shields had been identified in Plaintiff's initial disclosures as a fact witness, his prelitigation report had long been disclosed, and Mr. Shields had been deposed by the Defendant. (Mot., Ex. 2; Resp. at 9.) Plaintiff now seeks leave to designate the two experts out of time.

### *LEGAL STANDARD*

Fed. R. Civ. P. 26(a)(2) provides

2) Disclosure of Expert Testimony.
   (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

Fed. R. Civ. P. 37(c)(1) provides

(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
   (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 6(b)(1)(B) provides

 (b) Extending Time.
   (1) *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:
      (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

The Supreme Court has addressed the meaning of "excusable neglect" in the context of the provision for late filings in bankruptcy law. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380 (1993). The Tenth Circuit later adopted the same reasoning and interpretation in *City of Chanute, Kan. v. Williams Nat. Gas Co.,* 31 F.3d 1041, 1045–46 (10th

Cir. 1994), when interpreting "excusable neglect" in the context of failure to file a timely notice of appeal.

The Supreme Court pointed out that "absent sufficient indication to the contrary, . . . Congress intends the words in its enactments to carry their ordinary, contemporary common meaning." *Pioneer,* 507 U.S. at 388 (internal quotations omitted). It pointed out further that the common meaning of "neglect" is " 'to give little attention or respect' to a matter, or ... 'to leave undone or unattended to esp[ecially] through carelessness.' " *Id.* (emphasis omitted) (quoting Webster's Ninth New Collegiate Dictionary 791 (1983)). The Court concluded that in using the term excusable neglect, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.*

The Supreme Court noted that excusable neglect in the context of Fed. R. Civ. P. 6(b) carries the same commonly accepted meaning as discussed in the bankruptcy rules context such that it "may extend to inadvertent delays." *Id*. at 391-92. *See also Romero v. Peterson,* 930 F.2d 1502, 1505 (10th Cir. 1991) (holding that the presence of "excusable neglect" under Rule 4(a)(5) "should be determined on the basis of the common sense meaning of the two simple words") (internal quotations omitted).

In *Pioneer,* the high court directed lower courts grappling with whether neglect is excusable to "tak[e] account of all relevant circumstances surrounding the party's omission" and specifically pointed to four factors to be weighed in the process: "the danger of prejudice to [the nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and

whether the movant acted in good faith." *Id.* at 395; *see also In re Centric Corp.,* 901 F.2d 1514, 1517 (10th Cir. 1990). The Tenth Circuit has held that the third factor—"fault in the delay"—is "perhaps the most important single factor . . . in determining whether neglect is excusable." *Chanute*, 31 F.3d 1046 (citing *United States v. Andrews*, 790 F.2d 803, 806 (10th Cir. 1986)). *See Shifers v. Arapahoe Motors, Inc.*, No. 17-CV-01753-CMA-KLM, 2018 WL 6620866, at *3 (D. Colo. Dec. 18, 2018).

> The Tenth Circuit has held
>
> This is not to say that the test for excusable neglect is not a strict one. It is merely to say that, "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' ... is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."

*Chanute*, 31 F.3d at 1046 (quoting *Pioneer,* 507 U.S. at 391). Nonetheless, "an inadequate explanation for delay, may, by itself, be sufficient to reject a finding of excusable neglect." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017).

*ANALYSIS*

**A.     Meteorologist Howard Altschule**

This case involves hail damage that allegedly occurred on June 18, 2018 to the commercial property known as Fordcye Auto Center, Inc. (Compl. [Doc. No. 1] at ¶¶ 5-6.) Plaintiff states that the law firm representing Plaintiff hired a new administrative assistant on February 3, 2020, who apparently misunderstood the difference between 'order date' and 'due date' when directed to obtain a meteorologist report for June 18, 2018 at the location of the Fordcye Auto Center. The assistant apparently placed the order for the report on the date the

attorney expected to receive the report.[2]  (Mot. at 1-2.)  Plaintiff represents that the request for the report was not received by the meteorologist until February 24, 2020, and that the meteorological report was actually received by Plaintiff's counsel on March 9, 2020.  (Mot. at 2.)  The deadline by which Plaintiff was required to disclose affirmative experts, with reports as required by Fed. R. Civ. P. 26(a)(2), was February 17, 2020.  (Minute Order [Doc. No. 19].)

During the claims adjustment process, the Plaintiff's engineer reportedly obtained a OneSite weather report showing that hail of 1.75 inch was present at the location on the date the damage was alleged to have happened.  (Compl. at ¶ 23.)  It does not appear that Defendant contests that there was a hailstorm affecting the property on the date alleged, although there may or may not be disagreements about the attributes of the hail itself.  (*See* Scheduling Order [Doc. No. 15], Defendant's Statement of Claims and Defenses at 7; Answer [Doc. No. 8] at ¶ 23.)

If Defendant disputed that a hail event occurred on June 18, 2018, Defendant would have already marshalled its evidence to support that defense, especially in light of the fact that the Defendant had already paid for acknowledged hail damage.  (Compl. at ¶ 11.)  In any hail damage case, it is *de riguer* that one or both parties would present meteorological evidence for the presence of hail; however, the importance of such evidence would largely be dependent on whether the existence of a hail incident at the subject location was seriously disputed.

Given that what is missing with respect to Mr. Altschule is essentially a weather report for which there appears to be little conflict, there is almost no effect on the Defendant's litigation strategy by allowing the expert to be disclosed late.  To the extent the Defendant alleges

---

[2] It is unclear when the attorney made original file request for a report, but the court is presuming it was on or about February 3, 2020.

prejudice by not being allowed to designate a rebuttal meteorologist, the court can cure that by allowing disclosure of a rebuttal expert by Defendant to Mr. Altschule.  The court notes that had the expert been timely deposed, the same choice would have been presented to Defendant.  To the extent the opposing parties desired to take depositions of these two experts, again that can be accomplished at this stage with no prejudice to either party and would have happened in any event had the meteorologist been timely disclosed.  These meteorologists have no bearing on the issues presented by the dispositive motion which has been filed but is not yet fully briefed.  (*See* [Doc. No. 26].)  This court does not set trials until after ruling on dispositive motions; thus allowing the additional discovery regarding meteorological data while the dispositive motion is pending completion of briefing and ultimate ruling will not delay the trial.  The mix-up by a new employee, which caused the report to be delayed, is unfortunate, but certainly neither willful nor does it appear to have been done in bad faith.

Therefore, the court finds that the late disclosure of Howard Altschule came about as a result of excusable neglect.  Therefore, the court will allow Plaintiff to designate Mr. Altschule as an affirmative expert in its case-in-chief outside of the original deadline.[3]  The request to extend the dispositive motion deadline is, however, denied as being unnecessary to remedy this litigation error.

---

[3] Since the court has determined that the late disclosure of Mr. Altschule came about as a result of excusable neglect, the court finds there is good cause to amend the Scheduling Order pursuant to Fed. R. Civ. P. 16 to allow Mr. Altschule's disclosure outside the previously set parameters for disclosure of affirmative expert witnesses and to allow a rebuttal expert disclosure and depositions of one or both new experts outside those parameters as well.

B.     **Engineer Martin Shields**

Plaintiff offers absolutely no reason why Mr. Shields was not disclosed as an affirmative expert witness, other than characterizing the failure as "an oversight." (Mot. at 2.) Other expert witnesses were timely disclosed by Plaintiff, Plaintiff and Defendant were aware of the existence of Mr. Shields, and they both had the engineering report Mr. Shields prepared pre-litigation. Mr. Shields was deposed. Mr. Shields was listed as a fact witness in the case and presumably may be called as a fact witness to testify about what he did, what he saw, what he recommended and other factual things that happened in 2018 while he was involved in the claim process and in preparing the engineering report purported to have been submitted to the insurance company. (*See* Shields Engineering Group Report dated November 29, 2018 [Doc. No. 22-1], discovery number 'Fordcye_000102-110.')

To the extent Plaintiff wishes to call Mr. Shields to give expert opinion testimony pursuant to Fed. R. Evid. 702, 703, or 704, however, the Plaintiff is in violation of Fed. R. Civ. P. 26(a)(2). !Rule 702 allows a witness who is qualified as an expert by knowledge, skill, experience, training, or education to give his opinion to a jury if his specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, so long as his testimony is based on sufficient facts or data and is the product of reliable principles and methods, reliably applied to the facts of the case. Fed. R. Evid. 702. If a party designates a witness as an expert and discloses the expert's opinions, the opposing party has a right to challenge the expert based on the criteria of Rule 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Those challenges were not mounted here as to any opinion by Mr. Shields because

Plaintiff did not designate Mr. Shields as eligible to render opinion testimony under the evidentiary rules.

To allow Mr. Shields to now be designated to render opinion testimony would be highly prejudicial to Defendant as well as having the potential to significantly delay the trial of this case. Defendant would necessarily have to incur expense to hire a rebuttal expert and have that rebuttal expert prepare and disclose a report. The deposition of Mr. Shields would need to be reopened and the rebuttal expert would need to be available for deposition as well. It is possible that Mr. Shields and any rebuttal expert would be required to supplement their reports pursuant to Fed. R. Civ. P. 26(e), which would mean more depositions. It is possible that Defendant would need to file, brief, and argue *Daubert* motions with respect to Mr. Shields, and Plaintiff would have the same opportunity to challenge the new rebuttal expert, if warranted.[4]

As noted by the Tenth Circuit, the most important of the four criteria is attribution of fault in causing the delay. *Chanute*, 31 F.3d at 1046. Obviously, the fault here falls completely on Plaintiff's counsel. In fact, the only reason for the delay and the court's having to deal with this matter now is that apparently <u>all three lawyers</u> representing Plaintiff simply forgot to include Mr. Shields in the expert disclosures. This explanation is inadequate and certainly cannot justify a finding of excusable neglect, *Perez,* 847 F.3d 1253, much less justify putting Defendant to the costs associated with fixing the "oversight" now and delaying the progress of the trial.

Although the court has been presented with no evidence of bad faith in the case, it does appear from the history of discovery that Plaintiff has been less that zealous in pursuit of its own

---

[4] The Defendant has mounted such a challenge with respect to Plaintiff's expert Mark Rothbauer, who was designed by Plaintiff as a non-retained expert similar to how Plaintiff now wishes to designate Mr. Shields.

discovery. This may be a tactical or financial decision; however there is simply no excuse or acceptable rationale for the failure to properly designate a parties' own expert witnesses when the date to do so is known and even acted upon with other experts.

After weighing the four *Pioneer* factors and looking at the facts as a whole, the court finds no justifiable reason for such lackadaisical practice. The court cannot consider the omission here to be harmless, either. While Mr. Shields was known to the parties and the defendant was able to depose him about his engineering report, given the significant costs in both time and dollars that would have to be spent to rectify Plaintiff's counsels' forgetfulness in order to allow Mr. Shields to be treated as a Rule 702 expert, there is simply no way to treat this error as harmless.

Therefore, pursuant to Fed. R. Civ. P. 37(c)(1), Plaintiff will not be allowed to call Martin Shields to supply opinion evidence pursuant to Fed. R. Evid. 702, 703 or 704 on a motion, at a hearing, or at a trial.

It is **ORDERED**

"Plaintiff's Motion for Leave to File Late Expert Disclosure" ("Mot.") [Doc. No. 22] is **GRANTED in part and DENIED in part:**

1. **The Motion is Granted** with respect to Plaintiff's proposed expert witness Howard Altschule. Plaintiff may fully and appropriately disclose Howard Altschule as an affirmative witness in this case <u>within two business days</u> of the entry of this Order together with Mr. Altschule's report. Thereafter, Defendant may disclose, <u>on or before June 5, 2020</u>, a rebuttal expert to Mr. Altschule if it so chooses. Both experts shall be disclosed in compliance with Fed. R. Civ. P. 26(a)(2). If the parties desire to depose Mr. Altschule and/or the rebuttal expert

disclosed by Defendant, the depositions must be completed on or before July 10, 2020. The parties are reminded that discovery in this case closed on April 1, 2020 and is not extended for any purpose other than disclosure of these two experts and the associated depositions.

2.  **The Motion is Denied** with respect to Plaintiff's proposed expert witness Martin Shields. Plaintiff is prohibited from calling Mr. Shields as an expert pursuant to Fed. R. Evid. 702, 703 or 704 to render opinion testimony on any motion, at a hearing, or at a trial.

Dated May 4, 2020

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge